## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5113-17T4

IWONA E. LONGHITANO,

    Plaintiff-Appellant,

v.

ANTHONY G. LONGHITANO,
JR.,

    Defendant-Respondent.

_____

Submitted September 16, 2019 – Decided November 8, 2019

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0488-16.

Neal J. Berger argued the cause for appellant.

Respondent has not filed a brief.

PER CURIAM

Plaintiff Iwona Longhitano appeals from a judgment of divorce (JOD) entered by Judge Michael J. Rogers following a three-day trial, arguing on appeal:

POINT I

THE LOWER COURT'S DECISION MUST BE REVERSED BECAUSE [PLAINTIFF] WAS DENIED HER CONSTITUTIONAL RIGHT TO BE REPRESENTED BY AN ATTORNEY OF HER CHOICE.

POINT II

THE APPELLATE DIVISION SHOULD REMAND THIS CASE TO THE TRIAL COURT FOR A DETERMINATION OF WHETHER [PLAINTIFF] WAS COMPETENT TO PROCEED TO TRIAL AND WHETHER HER TRIAL COUNSEL ZEALOUSLY REPRESENTED HER.

We reject both of these meritless arguments, refuted by the record, and affirm.

Plaintiff contends that the judge mistakenly applied his discretion in denying her request for a continuance due to her mental health, contending during the trial she "was prejudiced . . . because she was not able to respond clearly and in sound mind." The trial record, however, is devoid of any requests by plaintiff seeking a continuance.

In his oral decision following trial, Judge Rogers recounted that on the initial trial date of April 25, 2018, plaintiff's counsel represented to the court that plaintiff "was not functioning very well and was not ready for trial."

"[N]oting that [plaintiff], by statements of her counsel, was suffering from some mental health issues[,]" the judge entered an order that day directing "counsel to obtain any relevant mental health records and a report from [plaintiff's] therapist" so the judge could ascertain if she "was able to proceed to trial."

On May 14, 2018, Judge Rogers reviewed a report authored by a nurse practitioner in psychiatry who informed the court that plaintiff was "under her care for a mood and anxiety disorder, and was on medication and supportive psychotherapy." Neither plaintiff nor her counsel requested a continuance or voiced concern about plaintiff's ability to proceed. Instead, plaintiff's counsel asked and received the judge's permission to voir dire plaintiff with regard to her mental condition and her "ability to understand the proceedings." Counsel questioned if plaintiff was "okay with testifying this morning," to which plaintiff responded, "I guess." Notwithstanding that plaintiff was taking medications—the names of which she did not "remember . . . exactly"—plaintiff affirmatively responded to the judge's questions about the role of the judge and both counsel. The judge subsequently asked plaintiff if she was "prepared to proceed today[.]"

Plaintiff responded she just needed "like one hour" because she had a "big problem sleeping" and was feeling "a little bit like foggy kind of right now."[1]

Although plaintiff asserts that "given this information, the [judge] failed to continue the trial[,]" the full context of Judge Rogers's response evinces that he found plaintiff was able to proceed and assured her he would address any change in her condition if it arose during the course of the trial. Following counsel's and his questioning, Judge Rogers observed plaintiff was "able to answer the questions, and [was] very focused on the questions." After telling plaintiff, "if you feel there comes a point in time where you're laboring under some problem" to so advise her counsel, "and I'm sure [counsel will] bring it to my attention," to which plaintiff responded, "Yeah." Judge Rogers described plaintiff as "looking me right in the eye" when he told her:

> you seem focused, you're paying attention, you're nodding your head, your answers are responsive to the questions that were asked by [your counsel] and by me. And you certainly know the role of your attorney, you know the role of your husband's attorney, and you know the role of the [c]ourt.
> So I do understand though, and I have a medical report that says you do suffer from some anxiety issues,

---

[1] On the second successive day of trial, plaintiff testified that she was unable to drive if she did not "sleep for a few days" because she did not "want to be put other people in danger if I don't sleep." When asked how she got to trial, however, she indicated she drove herself, as she did after the initial trial date.

A-5113-17T4

and I respect that and understand that. That doesn't mean you're not prepared to proceed, it just means that we, in this our society, we medicate these medical conditions. And you're on some medicines for that purpose. But you seem fine to proceed to me.

So if that changes, if you don't feel right, or you're sick or something happens, let [your counsel] know and we'll deal with it when it comes up.

But today is the day. It's an old case, today is the day that these parties, you and your husband are entitled to a decision on your case. That's what this system is all about.

I see [plaintiff] is nodding her head and . . . seems to be focused on getting through this process, as I said earlier, calmly and peacefully, correct? Okay. So she's nodding her head, yes, please say yes for the record.

Contrary to plaintiff's present argument that she "was not feeling well" during the trial and that the judge's failure to grant a continuance "resulted in an unfair trial where [plaintiff] could not appreciate questions, the roles and consequences[,]" the judge amplified his initial findings in his final decision, reflecting,

while it's clear that [plaintiff] does suffer from depression and anxiety, based on the medical records, it's equally clear that she was under appropriate medication, she was able to deal with the testimony quite easily. And even though she was on medications, it in no way [a]ffected her ability to testify and to understand the issues in the case and to take a position as she did on various issues during trial.

5

Judge Rogers concluded plaintiff was "in complete command of her faculties [and] knew exactly the purpose of the trial."

We are unpersuaded by plaintiff's freighted use of parts of the trial transcript to support her contention that she was "rambling," "not speaking cohesively (sic)," and "could not appreciate questions." Plaintiff points to the judge's comment that plaintiff has "been rambling a little bit, and she's not been particularly responsive, although when [plaintiff's counsel] gets her focused she does become responsive."

A complete review of the record reveals the judge was commenting, not on plaintiff's inability to focus or incoherence, but on plaintiff's additional comments that were unresponsive to the exact question posed and often added complaints about her marriage. Illustrative of this problem is plaintiff's testimony during cross-examination during the second day of trial:

> Q. Isn't it true that you worked as a nanny, as you testified yesterday?
> A. Yeah, in 2013, when he throw me out from my house.
> Q. And isn't it true that you also worked cleaning houses?
> A. Yeah, before that, yeah.
> Q. When did you do that?
> A. 2013 too, when he start throwing me out from the house and I couldn't go because (indiscernible) was coming.
> Q. Can you answer my question, [plaintiff]?

A. Yes. And took my phones away from me because he didn't reach me. And he was pushing people too[.]

THE COURT: [Plaintiff], please try and just confine yourself to the question.

THE WITNESS: Okay.

THE COURT: [Defense counsel] has a right to the questions --

THE WITNESS: Okay.

THE COURT: And answer format.

THE WITNESS: Okay.

THE COURT: And you're, I'm not criticizing you, a lot of people do this.

THE WITNESS: Okay.

THE COURT: But you you're just running on --

THE WITNESS: Okay.

THE COURT: With other statements that are not responsive to what [defense counsel is] saying.

THE WITNESS: Okay.

THE COURT: So please just listen to [defense counsel], and answer [defense counsel's] question and then wait for the next question. At some point [defense counsel will] be done with his questions, just take them one at a time.

As the judge noted shortly thereafter when allowing plaintiff's counsel to interject during cross-examination instructions to plaintiff to answer the question posed, plaintiff "does talk on . . . a little bit from time to time. We're just trying to keep her focused. I didn't see anything wrong with it." Thus, the issue involved not plaintiff's mental state but the age-old problem of confining a witness's answers "to the sphere of responsiveness." Maisto v. Maisto, 123 N.J.L. 401, 403 (Sup. Ct. 1939), aff'd, 124 N.J.L. 565 (E. & A. 1940).

7

As the judge found in his decision, plaintiff's "demeanor was as a result of the pressures of marriage and divorce and had nothing to do with any anxiety or mood disorder. She was completely responsive and she was able to fully participate in the trial." In addition, the judge determined that plaintiff's emotions during her testimony, which included "bitterness, anger" were attributed to the stress of litigating a divorce, and not to her anxiety disorder.

We see no support in the record for plaintiff's contention that she requested an adjournment or that there was cause for her counsel to request one. And even if one was requested, plaintiff offered no grounds to justify a continuance. Moreover, even if the judge abused his discretion in denying an adjournment request, plaintiff failed to articulate how she was prejudiced. See State v. Hayes, 205 N.J. 522, 537 (2011) (recognizing New Jersey has long accepted the view that a "'motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that [a party] suffered manifest wrong or injury'" (quoting State v. Doro, 103 N.J.L. 88, 93 (E. & A. 1926))). Indeed, plaintiff does not appeal any of the JOD terms.

Plaintiff also argues the trial court "refused to discharge [plaintiff's] counsel, and forced [her] to proceed to trial, rather than postpone the trial and

allow [her] to retain the services of an attorney of her own choosing." We determine plaintiff's arguments, including her inapposite reliance on criminal right-to-counsel cases, lacks sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E); see In re Estate of Schifftner, 385 N.J. Super. 37, 44-45 (App. Div. 2006) (stating that generally there is no constitutional right to counsel in civil cases). We add only that the record is bereft of any request by plaintiff to obtain new counsel or to represent herself. On the second day of trial, a tardy plaintiff apologized to the judge and stated, "Because my attorney tried to release her from representing me. So if I want to appeal the case, because things happened between me and her[.]" She said nothing about obtaining new counsel. And, once again, she failed to proffer any evidence that she was prejudiced by her chosen counsel's representation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5113-17T4